UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE

CRIMINAL ACTION NO. 7:07-cr-23-GFVT-4

UNITED STATES OF AMERICA,                                          PLAINTIFF,

V.                          **MAGISTRATE JUDGE'S REPORT
                              & RECOMMENDATION**

OCEANUS PERRY,                                                     DEFENDANT.

*** *** *** ***

This matter is before the Court on Defendant Oceanus Perry's, ("Perry"), *pro se* Motion to Vacate under 28 U.S.C. § 2255. [Record No. 321]. Perry also filed a Motion for Discovery, Inspection and Expansion of the Record [Record No. 323] and a Motion for Evidentiary Hearing. [Record No. 324]. Consistent with local practice, the matter has been referred to the undersigned for preparation of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  Having been fully briefed, and for the reasons discussed below, it is recommended that Perry's motions be denied.

I. FACTUAL & PROCEDURAL HISTORY

The following factual and procedural summary is taken from the Sixth Circuit's opinion rendered following Perry's direct appeal.

> This criminal appeal arises out of a prison fight. On September 17, 2007, Perry and Pedro, along with inmates William Burrell and Anthony Ward, were imprisoned at Big Sandy United States Penitentiary in Inez, Kentucky. Officers Ed King, Roger Jude, and John Bussey were prison guards employed at Big Sandy. The following facts were established at trial, primarily though testimony and a video recording of the incident captured from four different angles.

The incident began on the second floor of the B–4 housing unit. Following protocol, Officer Bussey asked Pedro to submit to a search of his person. Pedro refused. Bussey told Pedro he would be escorted to the Lieutenant's Office where he would be searched by supervisors. By this time Officer King had arrived to assist Bussey. Inmates Ward and Burrell, who were in close proximity to Pedro, interjected themselves between Pedro and the officers, and descended slowly down the stairs, thereby distracting the officers. Pedro descended quickly down the stairs and trotted off toward the back of the housing unit. On his way, Pedro handed an object to Perry, who was standing in the common area of the housing unit. Officers King and Bussey retrieved Pedro and returned him to the location of the other inmates.

Officer Bussey and the three inmates eventually ended up in a downstairs corner of the housing unit and Bussey began searching Pedro's person. Bussey told Ward and Burrell to move along, but they refused to leave Pedro's side. Officer Bussey radioed for assistance. Officers Jude and King arrived and the three officers told the inmates to place their hands on the wall. Officer Jude began searching Burrell. During the search, Burrell removed his hands from the wall and told Jude to keep his hands off of him. Jude ordered Burrell to place his hands back on the wall and Burrell complied. Shortly thereafter, Burrell again removed his hands from the wall and turned to face Officer Jude. At this point, Pedro removed his hands from the wall and started walking towards Officer Jude. Jude attempted to tackle Burrell and bring him to the ground and Pedro took a swing at Jude.

Officers King and Bussey attempted to control Pedro and backed him into a wall. Perry ran from the gallery toward the scuttle. He dropped two items on the ground near the stairway before entering the fray. One of the items was his radio headset. The headphones became tangled in his boot and he dragged the headphones and the attached radio into the fight. The other item remained by the stairwell, untouched, for the duration of the fight. The video is clear in this regard. Perry ran toward Pedro and Officers King and Bussey, grabbed Officer Bussey around the waist and pulled him down, which left Officer King to battle Pedro by himself. Ward attempted to pull Officer King to the ground, which allowed Pedro to partially release himself from King's grasp. Pedro freed himself with a punch to King's head, knocking him to the floor. While on the floor, Pedro kicked and punched Officer King in the head. Pedro allowed him up from the ground, and as Officer King rose, Pedro, with a running start, drove his knee into King's head, which spun King around. Pedro began to punch King again in the torso.

Meanwhile, Perry had secured Officer Bussey in a full-body hold as both were lying on the ground. Bussey testified that while the men were engaged on the ground, Perry began to choke him by placing the bend of his elbow on Bussey's Adam's Apple, a maneuver apparently known as a triangular choke hold. Bussey testified that Perry told him to "hold still, that he's going to snap my neck." R. 234, at 63. Officer Jude testified that he heard this comment. *Id.* at 233. Perry testified that he never choked Bussey, but merely restrained him in order to try

2

and contain the situation, which he believed was escalating into an instance of officer brutality. He testified that he told Bussey, "Calm down, relax, I'm not trying to do nothing to you," and that *Bussey* said he was going to snap *Perry's* neck. R. 235, at 193.

While Perry was restraining Officer Bussey on the ground, Pedro, who was beating Officer King, took a break from King and kicked Bussey twice in the head. Officer King regained some balance, staggered back toward Pedro, and received one last punch in the torso before Pedro was shoved away by an oncoming officer. Pedro stumbled on his own shirt, which by that point was laying on the ground, and fell to the floor. Two other officers eventually restrained Pedro.

Officer King, meanwhile, assisted Officer Jude, who had been struggling with Burrell on the ground since the fight began. Additional officers arrived and struggled to remove Officer Bussey from Perry's clutch. The entire scuffle lasted less than 45 seconds and was captured by four video cameras placed at different angles in the housing unit. The jury watched the videos at trial.

As additional officers began arriving at the scene, the other item Perry set down by the stairway before entering the fight remained untouched. Lieutenant Gregory Nix eventually noticed it, picked it up, and placed it in his pocket. Nix testified later that the object was a six-inch metal weapon sharpened to a point, commonly known as a "shank." R. 235, at 67. The scene was photographed and the photographs were presented to the jury at trial. *See* appx. 65–77.

Officers Bussey, King, and Jude, along with their examining physicians, testified at trial regarding the officers' injuries. Specifically, due to the squeeze Perry placed on Officer Bussey's neck, his airflow was severely restricted and he believed at that moment that he was going to die. He suffered redness around his neck, and pain throughout his neck and back. He had abrasions over his right eye and right elbow. Officer King had pain in his nose, mouth, and the back of his head. He had bruising under his left eye, a hematoma on the back of his head just above his neck, a bloody nose, and a chipped tooth. In addition to physical injuries, Officer King suffered from depression and anxiety as a result of the attack. Officer Jude experienced lingering pain in his left shoulder and neck, and had decreased range of motion and muscle spasms.

Burrell, Pedro, and Perry were charged in a second superseding indictment with forcibly assaulting Officers Bussey, Jude, and/or King, inflicting bodily injury upon them, while the officers were engaged in the performance of their official duties. 18 U.S.C. § 111(a)(1) and (b). The government expressly included a theory of aiding and abetting in this charge. Perry was also charged in a separate count with knowing possession of a prohibited object intended to be used as a weapon. 18 U.S.C. § 1791(a)(2), (b)(3).

The jury found Pedro and Perry guilty on count one, and was deadlocked on count one with respect to Burrell. It found Perry guilty on count two. Both Perry and Pedro moved for judgments of acquittal and for new trials on various grounds. The district court denied all post-trial motions and the defendants were subsequently sentenced.

United States v. Perry, 401 Fed.Appx. 56, 57-59 (6th Cir. 2010) (footnote omitted).

Perry appealed his conviction to the Sixth Circuit, claiming error for the use of extra and visible security measures to restrain the Defendants at trial, the government's destruction of exculpatory evidence, the selection of the jury pool, and application of the career criminal enhancement in calculating his sentencing guideline range. [Corrected Appellate Brief, No. 08-6219, & Supplemental Brief by Oceanus Perry, No. 08-6219]. These claims of error, along with all others raised on appeal were denied by the Sixth Circuit. Perry, 401 Fed.Appx. 56.

On March 15, 2012, Perry filed the instant Motion to Vacate under 28 U.S.C. § 2255. [Record No. 321]. Perry also filed an amendment to his § 2255 brief on April 17, 2012, and a second amendment on August 20, 2012. [Record Nos. 325 & 337]. Perry states the following seven (7) grounds for relief:

1. The indictment and resulting jury instructions under which he was convicted were duplicitous and lacked necessary statutory language making them "fundamentally deficient and impermissibly vague." [Record No. 321-1, at 2];

2. The instructions given to the jury were incorrect and eliminated the jury's ability to find Perry innocent. [Record No. 321-1, at 6-7];

3. The visible extra security measures taken to restrain the Defendants resulted in a violation of due process. [Record No. 325, at 7];

4. The government destroyed exculpatory evidence in violation of his due process rights. [Record No. 325, at 15];

5. The jury was selected from a pool chosen in violation of jury selection policy resulting in the systematic exclusion of minorities. [Record No. 325, at 23];

6. The Court imposed a sentence that was unconstitutional as it failed to add written rulings on objections to Perry's Presentence Report, failed to consider certain 18 U.S.C. § 3553 factors, and treated the career criminal enhancement under the sentencing guidelines as mandatory. [Record No. 337, at 3]; and

7. Perry's trial counsel was ineffective by failing to object to the jury instructions and the government's closing, failing to call a medical expert as a witness and call a subpoenaed witness, failing to conduct an adequate pretrial investigation, giving a closing argument that contradicted the defense presented previously during trial, having a conflict of interest due to personal circumstances, and failing to exclude a juror. [Record Nos. 321-1, at 10-11, & 325, at 2-3].

Perry argues that these errors merit reversal of his conviction. Perry also filed a Motion for Discovery, Inspection and Expansion of the Record [Record No. 323] and a Motion for Evidentiary Hearing [Record No. 324] in relation to his claims under § 2255. The merits of his § 2255 petition will be considered first, followed by the other motions.

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 2255, to successfully challenge conviction, a movant must establish either an error of constitutional magnitude which had a substantial injurious influence on the proceedings or a mistake of fact or law that was so fundamental as to result "in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process." Walton v. United States, 165 F.3d 486, 488 (6th Cir. 1999) (internal citations and quotation omitted). Additionally, a petitioner may not use a § 2255 motion, absent highly exceptional circumstances, to relitigate an issue that was raised and considered on direct appeal. Wright v. United States, 182 F.3d 458, 467 (6th Cir. 1999); Jones v. United States, 178 F.3d 790, 796 (6th Cir. 1999). Circumstances that would warrant consideration of an issue previously litigated include newly discovered evidence that was not available at the time of direct appeal or an intervening change in the law. Wright, 182 F.3d at 467; Jones, 178 F.3d at 796. Further, claims other than ineffective assistance of counsel must have been brought on direct appeal or are

5

otherwise procedurally defaulted. Bousley v. United States, 523 U.S. 614, 621 (1998); Peveler v. United States, 269 F.3d 693, 698 (6th Cir. 2001); Phillip v. United States, 229 F.3d 550, 552 (6th Cir. 2000).  In order to overcome procedural default, the petitioner must show cause excusing his previous failure to raise the claim and actual prejudice which would result in a fundamental miscarriage of justice if review is withheld. Bousley, 523 U.S. at 622-23 (citations omitted); Peveler, 269 F.3d at 698-700; Phillip, 229 F.3d at 552.

### III. ANALYSIS

#### A.  THE INDICTMENT AND JURY INSTRUCTIONS

Perry claims that the indictment under which he was convicted was vague, as it failed to allege that the assault involved "physical contact" or that Perry had "the intent to commit another felony." 18 U.S.C. § 111(a); Record No. 321-1, at 2-6. According to Perry, he was only charged with, and could therefore only be convicted of, simple assault. [Record No. 321-1, at 5]. Perry also alleges that the indictment and jury instructions were deficient by describing two separate crimes, assaulting a federal officer performing official duties and aiding and abetting in such an assault, under the same count. [Record No. 321-1, at 7-8].

Perry's reading of 18 U.S.C. § 111 signals a clear misinterpretation of the statute under which he was charged, convicted, and sentenced.  A defendant convicted under 18 U.S.C. § 111(a) must only commit one of the prohibited actions under that section. The simple assault distinction is relevant only in determining the severity of the penalty faced. 18 U.S.C. § 111(a); see also United States v. Gagnon, 553 F.3d 1021, 1027 (6th Cir. 2009). Simple assault under 18 U.S.C. § 111(a) excludes assaults that include a prohibited act plus physical contact of the victim or intent to commit a felony, ("assault plus"). 18 U.S.C. § 111(a); see also Gagnon, 553 F.3d at 1027 ("[T]he phrase 'simple assault' differs from 'all other cases' in that 'simple assaults'

6

involve the commission of *any* of the prohibited actions listed in [18 U.S.C.] § 111(a)(1) and §

111(a)(2), while 'all other cases' covers the commission of these same violations *plus* the intent

to commit a felony or resulting physical contact from forcible (and thus intentional) action."

(citation omitted)).   The maximum sentences under § 111(a) are different for simple assault

versus "assault plus." 18 U.S.C. § 111(a). However, § 111(b) provides for a sentencing

enhancement if a deadly or dangerous weapon is used or bodily harm inflicted, regardless of

whether a defendant is charged with simple assault or "assault plus" under § 111(a). Id. § 111.

The indictment specifically stated that the Defendants violated § 111(a)(1) "*inflicting bodily*

*injury* upon the officers." [Record No. 96].  The indictment was clearly sufficient to charge Perry

under § 111(a)(1) and subject him to the enhancement under § 111(b). *See* United States v.

Perry, 401 Fed.Appx. 56, 61-63 (6th Cir. 2010). Therefore, Perry's claim that the second

superseding indictment was vague and fundamentally deficient is without merit.   Further, any

alleged failure to distinguish between simple assault and "assault plus" in the jury instructions is

erroneous for the same reason.

Perry claimed he was impermissibly charged and convicted under a duplicitous

indictment on direct appeal. Id., at 59-63. The ground for Perry's claim is that indictment

charged aiding and abetting under 18 U.S.C. § 2 in the same count as the underlying charge

under 18 U.S.C. § 111. Record No. 321-1, at 7-8; Perry, 401 Fed.Appx. at 59-63. As he presents

no change in circumstances meriting reconsideration, his claim that the indictment charged

separate crimes in one (1) count is an attempt to relitigate the issue, without presenting cause to

do so. In his petition, Perry similarly claims that the failure to sufficiently distinguish between

aiding and abetting and assault in the jury instructions and jury verdict form was a prejudicial

error. [Record No. 321-1, at 7-8]. In Perry's direct appeal, the Sixth Circuit stated, "[s]ince the

criminal liability for principals and aiders and abettors is identical, *see* 18 U.S.C. § 2, there is no requirement that a jury unanimously find each was either a principal or an aider and abettor." Perry, 401 Fed.Appx. at 62. Therefore, there was no error and no prejudice in failing to distinguish between aiding and abetting and assault of a federal officer in the jury instructions and verdict form. Therefore, assuming Perry could overcome any procedural hurdles, this claim is without merit.

## B. JURY INSTRUCTIONS

Perry next claims that the jury instructions were in error as they made it impossible for the jury to acquit. [Record No. 321-1, at 6-7]. Perry bases this allegation on the use of the words "help" and "defense" in the instructions regarding both the conduct constituting aiding and abetting and his defense of justification. [Record No. 321-1, at 6]. Perry also claims that it was improper to instruct the jury that the guilt or possible guilt of others is not a defense to the charged crimes and should not influence the jury's decision. [Record No. 321-1, at 6-7]. This instruction, in conjunction with the instruction on justification requiring the jury to find the corrections officers used excessive force, basically removed any possibility of an acquittal based on Perry's defense of justification. [Record No. 321-1, at 7].

Notwithstanding any procedural issues to this argument, the Court properly instructed the jury on the governing law. The instructions mirrored the Sixth Circuit Pattern instructions accurately reflecting the law and were not "confusing, misleading, or prejudicial." United States v. Guthrie, 557 F.3d 243, 252 (6th Cir. 2008), quoted in United States v. Harvey, 653 F.3d 388, 396 (6th Cir. 2011). Moreover, the defense of justification does not assert that a defendant did not commit the conduct constituting the crime charged. Quite the opposite, justification admits that a defendant committed the relevant conduct. The defense does not challenge that the

conduct itself was criminal; instead, while acquiescing to such conduct, it asserts that the circumstances justify such conduct. *See* United States v. Newcomb, 6 F.3d, 1129, 1133 (6th Cir. 1993). The defense of justification is a reflection of society's policy that some criminal conduct may be excused or even merited. Id. Accordingly, the Court's reference to criminal conduct in the instructions regarding justification did not amount to a directed verdict and were correct. The use of the words "help" and "defense" in the instructions on both aiding and abetting and justification was not an error or prejudicial as a reasonable juror would be able to distinguish the Court's meaning in the different contexts.  The use of the same words in the two (2) contexts would not confuse or mislead a reasonably intelligent juror and did not amount to a directed verdict. Further, the corrections officers were not accused of a crime and the jury was not charged to find them "guilty" of using excessive force.  In both arguments, Perry's reading together of the instructions attempts to take them out of context of the entirety of the jury instructions.  The Court's instructions accurately reflected the law and were not confusing, misleading, or prejudicial. Therefore, the jury instructions were not in error.

## C.  Extra Security Measures, Destruction of Exculpatory Evidence, & Jury Selection

Perry claims that the Court's imposition of extra security measures that were noticeable to the jury resulted in a violation of his due process rights, the government destroyed exculpatory evidence resulting in a Brady and due process violation, and the jury selection process employed in his case resulted in a jury that did not represent a fair cross-section of the community and systematically excluded African Americans. [Record No. 325, at 7-14, 15-21, & 23-33]. All of these issues were raised by Perry on direct appeal and addressed by the Sixth Circuit. United States v. Perry, 401 Fed.Appx. 56, 63-67 (6th Cir. 2010); *see also* Corrected Appellate Brief, No. 08-6219, at 21-22. Perry has not presented any highly exceptional circumstances that would

merit reconsideration of these issues.   There has been no change in the law, no evidence discovered that was not available at the time of appeal, or any other circumstances that would render the Sixth Circuit's opinion questionable on any of these grounds. Therefore, Perry cannot use this avenue as a means of relitigating the issues and analysis of these claims is precluded.

### D.  IMPOSITION OF SENTENCE

Perry raised claims relating to his sentence in his second amendment to his petition. [Record No. 337]. He asserts that the Court erred by failing to add an addendum to his Presentence Report, by treating the career criminal enhancement under the Sentencing Guidelines as mandatory, and by failing to consider all the required factors under 18 U.S.C. § 3553. [Record No. 337, at 3]. This amendment was filed after the United States filed its response and the government has not been afforded the opportunity to address these claims.   However, as they fail on procedural grounds, the claims will be considered without any prejudice resulting to the United States.

Perry asserts that the Court incorrectly found the career criminal enhancement to be mandatory notwithstanding the fact that the sentencing guidelines are advisory. [Record No. 337, at 4-8]. Perry raised this issue with the Sixth Circuit in his *pro se* Supplemental Brief. [Supplemental Brief by Oceanus Perry, No. 08-6219, at 4-9]. The Sixth Circuit found that the District Court correctly determined Perry's guideline range. Perry, 401 Fed.Appx. at 66. Perry gives no basis meriting reconsideration.  Also, it should be noted that while the guideline range itself is not binding on a court, the calculation of the guideline range requires certain enhancements due to a defendant's actions and characteristics. In other words, while the range itself is advisory, the factors used to calculate a defendant's correct sentencing range, including

any relevant enhancements, are not afforded the same non-compulsory status in calculating the advisory range.  Therefore, the Court will not allow Perry to relitigate this issue.

Perry also claims the Court failed to attach written rulings on objections to the Presentence Report and failed to consider the 28 U.S.C. § 3553 factors of alternative sentencing and sentencing disparity. Perry failed to raise either claim of error on direct appeal and "[s]entencing challenges generally cannot be made for the first time in a post-conviction § 2255 motion." Weinberger v. United States, 268 F.3d 346, 351 (6th Cir. 2001) (citations omitted). Perry alleges no cause for failure to raise these claims previously and does not show that a fundamental miscarriage of justice will result if not considered. Therefore, these claims are procedurally defaulted.

## E.   Ineffective Assistance of Counsel

In addressing ineffective assistance of counsel claims, the Supreme Court has elaborated on the standard of review under 28 U.S.C. § 2255.  "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper function of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686 (1984).  To meet this standard, the Court set forth a two part test that a defendant must satisfy by a preponderance of the evidence.  First, defendants are required to show that their representation fell "below an objective standard of reasonableness." Id. at 687-88.   This standard is very deferential, with a "strong presumption that counsel's conduct 'falls within a wide range of reasonable professional assistance.'" Cope v. United States, 272 Fed.Appx. 445, 448 (6th Cir. 2008) (quoting Mason v. Mitchell, 320 F.3d 604, 616-17 (6th Cir. 2003)). If a defendant is able to satisfy the first prong, he must then show prejudice, which requires a defendant to "show that there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

At trial, Perry was represented by Donald Waggener, ("Waggener"). All claims of ineffective assistance of counsel relate to Waggener's representation of Perry before and during trial.[1] Perry claims the following instances of ineffective assistance of counsel: 1. failing to object to the jury instructions and the government's closing; 2. failing to call a medical expert as a witness and call a subpoenaed witness; 3. failing to conduct an adequate pretrial investigation; 4. giving a closing argument that contradicted the defense presented previously during trial; 5. having a conflict of interest due to personal circumstances; and 6. failing to exclude a juror. [Record Nos. 321-1, at 10-11, & 325, at 2-3]. These claims are addressed in order and are all determined to be without merit.

### 1.   Failure to Object to Jury Instructions and the Government's Closing

Following Strickland's logic, in order for a failure to object to be deficient representation, the claimed error must have been objectionable.  Further, there can be no reasonable claim that the failure to pose an objection "might [have been] considered sound trial strategy." Michel v. Louisiana, 350 U.S. 91, 101 (1955); *see also* Strickland, 466 U.S. at 689.

First, Perry claims that his attorney's failure to object to the Court's instructions regarding testimony evaluation was ineffective assistance because they "eliminated the possibility of impeaching government witnesses." [Record No. 321-1, at 13]  However, there is no error in the Court's instructions and any objection would have been frivolous and futile. *See* United States v. Robson, 307 Fed.Appx. 907, 912 (remarking that an objection would have been

---

[1] In his original petition, Perry asserted ineffective assistance of appellate counsel but stated no grounds of error. [*See* Record Nos. 321, at 8].  However, in his first amendment to his petition, Perry asked that his claim for ineffective assistance of appellate counsel be excluded from consideration. [Record No. 325, at 1]. Therefore, the Court is not considering this ground originally raised.  Further, the lack of factual allegations would be cause for dismissal of the claim.

"futile" to a proposed jury instruction that mirrored the Sixth Circuit pattern instruction). Further, none of the instructions can be said to expressly or impliedly limit the possibility of impeaching the government's witnesses.  Therefore, this claim is without merit.

Second, Perry claims that Waggener's failure to object to the following statement by Assistant United States Attorney ("AUSA") Marshall in closing was deficient representation:

> They can also be guilty of helping someone else and intending to help someone else assault someone.
> So, for example, Mr. Perry, as he is holding Mr. Bussey there subdued while Mr. Pedro stomps his head, there's an example of Mr. Perry aiding and abetting Mr. Pedro's assault.

[Record No. 191, at 53.1-20].  However, Perry gives no basis for an objection, claiming only that it "tainted the jury against the defense of Perry." [Record No. 321-1, at 14-15].  As a prosecutor in closing "may state conclusions drawn from the evidence," United States v. Ratliff, 346 Fed.Appx. 473, 476 (6th Cir. 2009) (citations omitted), and it is obvious AUSA Marshall was doing just that, trial counsel cannot be charged with an error for failing to object to a non-objectionable statement.  Therefore, this claim of ineffective assistance of counsel is without merit.

2.  *Failing to Call a Medical Expert as a Witness and Call a Subpoenaed Witness*

The Eleventh Circuit described the level of deference due to counsel when deciding what witnesses to call at trial:

> That other witnesses could have been called or other testimony elicited usually proves at most the wholly unremarkable fact that with the luxury of time and the opportunity to focus resources on specific parts of a made record, post-conviction counsel will inevitably identify shortcomings in the performance of prior counsel. . . . The mere fact that other witnesses might have been available or that other testimony might have been elicited from those who testified is not a sufficient ground to prove ineffectiveness of counsel.

Walters v. Thomas, 46 F.3d 1506, 1514 (11th Cir. 1995) (citations, internal quotation marks, and alterations omitted), quoted in Grossman v. McDonough, 466 F.3d 1325, 1347 (11th Cir. 2006); *see also* Urban v. Ohio Adult Parole Auth., 116 Fed. Appx. 617, 623 (6th Cir. 2004) ("[T]he failure to call witnesses does not automatically establish ineffectiveness . . . [i]n the absence of any demonstration of prejudice . . . .").

Perry alleges that counsel's failure to call a medical expert to testify about the severity of Officer Bussey's injuries was unreasonable and resulted in prejudice. [Record No. 321-1, at 14]. This testimony would have suggested that the injuries were not as severe as Bussey's report indicated. [Record No. 321-1, at 14]. However, the severity of the injuries suffered by Officer Bussey had no impact on the case.  Proof of bodily injury was not necessary for conviction under 18 U.S.C. § 111(a)(1). Further, the government only had to prove "bodily injury," without any severity qualification, for the enhancement under 18 U.S.C. § 111(b). Id. § 111(b). Therefore, the testimony of an expert would have had no bearing on the jury's verdict on any count of the indictment and Perry suffered no prejudice as a result of Waggener's decision not to call a medical expert as a witness.

Perry also claims that Waggener's failure to call an inmate who had witnessed the event and had been subpoenaed to testify was unreasonable and prejudiced him. [Record No. 321-1, at 15-16]. There were several inmates originally named as defense witnesses that were brought to the trial, but released by the Court prior to testifying, including one (1) witness who was supposed to testify on Perry's behalf. [Record No. 235, at 101.3-7]. The transcript makes clear that when the witnesses were actually released by the Court prior to testifying, Perry acquiesced in the decision not to call his eyewitness after Waggener discussed it with Perry. [Record No. 235, at 101.3-7 ("Mr. Waggener: Your Honor, I discussed [releasing the witness] with Mr. Perry,

and we concur.")].  It is also obvious that the witnesses were not released until the day after the idea was first raised to the Court. [Record Nos. 234, at 299-300, & 235, at 100-01]. As first suggested by Waggener, counsel and the Court refrained from dismissing the witnesses until the next morning so that counsel could confer with their clients about the issue. [Record No. 234, at 299.13-300.12]. Therefore, the decision not to call the witness was at least in part due to Perry's agreement that the witness was not necessary and Perry's allegation that Waggener was deficient for failing to call the witness without merit.

   3.   *Failing to Conduct an Adequate Pretrial Investigation*

   In conducting any pretrial investigation, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland v. Washington, 466 U.S. 668, 690-91 (1984).  In evaluating a claim of insufficient investigation, "a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead . . . reasonable attorney[s] to investigate further." Wiggins v. Smith, 539 U.S. 510, 527 (2003).  Additionally, "[t]he relevant inquiry under Strickland is not what defense counsel could have pursued, but rather whether the choices made by defense counsel were reasonable." Siripongs v. Calderon, 133 F.3d 732, 736 (9th Cir. 1998) quoted in Brown v. United States, NO. 1:03-cv-90/1:99-CR-89, 2006 U.S. Dist. LEXIS 23973, at *12 (E.D. Tenn. March 20, 2006); *see also* Janosky v. St. Amand, 594 F.3d 39, 49 (1st Cir. 2010).  Strickland makes clear that any decisions made by an attorney to investigate or to refrain from investigating particular facts and circumstances must be evaluated for its reasonableness "viewed as of the time of counsel's conduct." Strickland v. Washington, 466 U.S.

668, 690 (1984).  Further, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." Id., at 691.

Perry makes several claims of error with regard to counsel's pretrial investigation.  Perry claims that Waggener failed to investigate the exculpatory evidence that was destroyed by the government. [Record No. 321-1, at 16-17]. This evidence included items that were on Perry's person during the attack, including a radio, headphones, and glasses, among other things, which Perry claims would have shown that "the object on the floor in the video was something other than a 'shank' by a means as simple as comparison." [Record No. 321-1, at 16]. However, during his testimony at trial, Perry was asked to identify the different object in the video, including his radio and headphones. [Record No. 235, at 199.22-205.7]. Perry was also asked to compare the picture of the shank with items he claims could have been the shank on the video. [Record No. 235, at 199.22-205.7]. During the course of this testimony, Perry admitted that his radio and other items did not look like the shank in the picture taken after the incident. [Record No. 235, at 201.16-202.8]. Additionally, while Perry now claims that the examples of the evidence used at trial were "non-similar" to the items on his person during the incident, he testified that the headphones shown to him at trial were the same model as those issued to inmates at Big Sandy, which was the only "replacement evidence" used. [Record Nos. 321-1, at 16-17, & 235, at 202.11-18]. As Perry traced the items on his person through the video at trial and admitted that the items seen in the video, his headphones and radio, did not look like the shank, his comparison tactic would not have been beneficial to his defense. Therefore, Perry was not prejudiced by any failure of counsel to investigate the items on his person.

Perry claims Waggener should have called a witness that would have testified that, after the attack, Officer Bussey indicated to the witness that his injuries were not as serious as he

noted in the paperwork about the incident. [Record No. 321-1, at 17-18].  Waggener had no knowledge of this witness prior to trial and was told about this witness by another defendant, Martin Pedro. [Record No. 321-1, at 18]. As previously discussed, the severity of Officer Bussey's injuries was not relevant to Perry's guilt on the crimes charged.[2] Further, Perry failed to give Waggener information that would cause him to be aware that an investigation was necessary. It is clear that another defendant in the case had information about the witness or was able to give his attorney information leading to discovery of the witness. Without being provided similar information by Perry, Waggener cannot be blamed for lacking knowledge about or failing to investigate the witness.

Perry claims that Waggener failed to properly investigate and therefore did not include within his writ of habeas corpus ad testificandum that the two (2) requested witnesses were eyewitnesses, which was significant in the denial of the writ. [Record No. 321-1, at 18]. However, while Waggener did admit to "an oversight of investigation," [Record No. 233, at 35.24], there were other grounds for denial of the writ not due to the "oversight of investigation" by counsel. [Record No. 233, at 35.15-19 (at the time the motion was filed, there was no ruling on the scope of the evidence and, therefore, the request stated general broad grounds, unaware that they would be insufficient)]. Moreover, Waggener raised the issue again at trial and the Court considered the fact that the potential witnesses were present at the altercation, yet still denied counsel's objection. [Record No. 233, at 35.15-47.7]. Therefore, Perry cannot show that Waggener's actions were unreasonable or that prejudice resulted.

Perry next claims that Waggener was deficient for failing to show him the surveillance video of the attack prior to trial. [Record No. 321-1, at 17]. However, Perry alleges no grounds that Waggener's failure to show him the tape prior to trial was linked to counsel's pretrial

---

[2] *See* supra § III.E.2.

investigation or any other error by counsel. Further, while this may have rendered Perry unaware "of the majority of the government's evidence until trial," he fails to show how this prejudiced him. [Record No. 321-1, at 17]. Therefore, this claim of error lacks merit.

Finally, Perry asserts that Waggener failed to adequately investigate Lieutenant Nix's incident reports, which would have shown that Lieutenant Nix committed perjury. [Record No. 321-1, at 18-19]. Such an investigation would have shown, according to Perry, that the report was not in existence at the time Lieutenant Nix stated that he spoke with Perry and, since all the inmates involved were immediately transferred to different institutions, Perry could not have spoken with Lieutenant Nix or signed the report as claimed. [Record No. 321-1, at 18-19]. An assertion of perjury alone is not grounds for exclusion of testimony or evidence.  While evidence can be presented to show that a witness is not telling the truth and discredit his testimony, a bare assertion of perjury will not cause a court to exclude a witness' testimony.  Further, the alleged perjured testimony of Lieutenant Gregory Nix was not the sole foundation for the admittance of evidence about the shank as Perry claims. Importantly, the shank and a photograph of the shank were admitted on the basis of testimony from John Stumbo who testified well before Lieutenant Nix. [Record No. 233, at 107.16-109.18 & 122.1-18]. Clearly, the shank would have been admitted absent Lieutenant Nix's testimony and Perry's assertion of the opposite is erroneous.

### 4.  *Giving a Closing Argument that Contradicted the Defense's Theory of the Case*

Closing argument highlights the wide range of effective trial strategies and tactics.  While the right to effective assistance of counsel continues through closing arguments, "[j]udicial review of a defense attorney's summation is . . . highly deferential- and doubly deferential when it is conducted through the lens of federal habeas." Yarborough v. Gentry, 540 U.S. 1, 6 (2003). This deference is extended because of the "broad range of legitimate defense strategy at that

stage" and the numerous resulting "tactical decisions" involved in determining how to best represent an individual client. Id.

Perry identifies several statements made by Waggener during the course of his closing argument that he claims contradict the defense theory presented throughout the rest of the trial. [Record No. 321-1, at 12-13]. Perry claims Waggener indirectly stated that Perry was in possession of a shank and that Perry came to the aid of Martin Pedro after the officers slammed Pedro into the wall. [Record No. 321-1, at 12-13]. However, these statements, in context of the entire closing, convey a theory of the case that implicates Defendant Pedro as the instigator of the incident, but when the officers began to use excessive force, Perry stepped in to prevent any further injury or harm. [Record No. 236, at 87.24-90.7]. Contrary to Perry's assertions, this version of events was consistent with the theory of case and illustrated Perry's justification defense. [*See* Record No. 236, at 90.6-7 (referring to the jury getting an instruction relating to Perry coming to Pedro's aid)]. Waggener's closing showed a thorough knowledge of the law and facts and a well-reasoned and argued summation of the evidence in favor of his client. Therefore, Perry's claim of deficient representation is baseless.

5. *Having a Conflict of Interest due to Personal Circumstances*

Perry claims that Waggener had a conflict of interest due to his wife's illness and surgery that caused Waggener to try to end the trial as quickly as possible and therefore not mount a full defense. [Record No. 321-1, at 15]. As grounds, Perry points to Waggener's failure to call two (2) designated defense witnesses (the medical expert and the inmate) and failure to present meaningful exculpatory evidence. [Record No. 321-1, at 15].   For the reasons discussed in section III.G.2. relating to the failure to call witnesses and the fact that Waggener presented a competent defense to the charged conduct, any personal conflict and desire to end the trial early

19

cannot be said to have affected the quality of defense presented by Waggener.  Waggener clearly exhibited reasonable professional judgment in presenting a defense for Perry. No deficiency or prejudice can be shown and therefore Perry's assertion is meritless.

###### 6.  *Failing to Exclude a Juror*

Perry claims that his counsel was ineffective for failing to strike juror 176 as she had served several terms of jury duty giving her familiarity with the AUSA, government witnesses, and courthouse staff, and she "had extensive law enforcement ties." [Record No. 325, at 2-3]. First, the record shows that many of the jurors had been previously qualified or otherwise involved as a federal juror. [Record No. 232, at 26.1-25 (listing only a relatively few jurors who had not been previously qualified)].  Further, juror 176 stated on at least three (3) separate occasions that she would be fair and impartial. [*See* Record No. 232, at 58.15, 83.4-7, & 101.21-24]. Moreover, beyond Perry's unsubstantiated assertions, there is no evidence as to why the jury's decided to elect juror 176 as jury foreperson or that her opinions were held in high regard. Waggener's decision not to strike juror 176 was a reasonable strategic decision that cannot be said to have resulted in any prejudice to Perry.  Therefore, the failure to strike juror 176 was not an instance of ineffective assistance of counsel.

#### IV. MOTION FOR DISCOVERY

Perry has moved the Court to order discovery and disclosure of certain documents under FEDERAL RULE OF CRIMINAL PROCEDURE 16, FEDERAL RULE OF CIVIL PROCEDURE 26, and RULE GOVERNING SECTION 2255 PROCEEDINGS 7. [Record No. 323]. RULE GOVERNING SECTION 2255 PROCEEDINGS 7 is the relevant authority and allows a court to order additional discovery for materials relating to the claims asserted in the motion. § 2255 R. 7(a). This rule allows a judge to order the parties to supplement the record to assist the court in making an informed decision.

However, in this case, the documents requested would not be of assistance to Perry or the Court in regards to the substance of his claims. Even if the contents were as favorable as Perry suggests, they are not necessary to the Court's ruling and would not present grounds for the Court to rule differently on any issue raised in his petition.  Accordingly, Perry's Motion for Discovery should be denied.

### V. MOTION FOR EVIDENTIARY HEARING

Perry requests an evidentiary hearing be held to determine the merits of his § 2255 petition. [Record No. 324]. As the evidence, arguments, and record before the Court are sufficient to conclusively show that Perry is not entitled to relief, a hearing is not warranted and his motion should be denied.

### VI. CONCLUSION

Having considered the matter fully and for the reasons stated above,

IT IS RECOMMENDED AS FOLLOWS:

(1)     Defendant Perry's Motion for Discovery, Inspection and Expansion of the Record [Record No. 323] be DENIED;

(2)     Defendant Perry's Motion for Evidentiary Hearing [Record No. 324] be DENIED; and

(3)     Defendant Perry's Motion to Vacate under 28 U.S.C. § 2255 [Record No. 321] be DENIED.

The parties are directed to 28 U.S.C. § 636(b)(1) for a review of appeal rights governing this Report and Recommendation.  Specific objections to this Report and Recommendation must be filed within fourteen (14) days from the date of service thereof or further appeal is waived. United States v. Campbell, 261 F.3d 628, 632 (6th Cir. 2001); Thomas v. Ann, 728 F.2d 813, 815

(6th Cir. 1984).   General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal.   Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004); Miller V. Currie, 50 F.3d 373, 380 (6th Cir. 1995).

Signed November 29, 2012.

Signed By:

Edward B. Atkins

United States Magistrate Judge